**E-FILED**
Thursday, 17 March, 2016  11:00:54 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| BRIAN JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14-CV-3068 |
| | ) | |
| MICHELE OLSON, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

A three-day jury trial was held in this case starting on July 14, 2015, on seven claims arising from incidents which occurred in 2007 and 2008 during Plaintiff's incarceration in the Western Illinois Correctional Center.  Four of the claims arose from the same facts:  the refusal to allow Plaintiff to use a bathroom near the library due to Plaintiff's medical condition (the "bathroom claims"). The other three claims were unrelated to the bathroom claim or to each other. [1]

---

[1] The claims in this case were severed from Plaintiff's original case, 08-cv-3199.  Case 08-cv-3199 was transferred to this Court in September of 2011, with 40 defendants and at the summary judgment stage.  After ruling on two rounds of summary judgment motions, the Court determined that the remaining claims would be most efficiently tried in one case, even though some of the claims were unrelated, instead of conducting multiple trials.  The claims

The jury awarded $1.00 in compensatory damages to Plaintiff on a retaliation claim against Defendant Annette Cowick.  On the bathroom claims the jury found against Defendants Skiles (Eighth Amendment claim), Hamilton (Eighth Amendment claim), and the IDOC (Rehabilitation Act claim), awarding $101 in total compensatory damages, $1.00 in punitive damages against Defendant Skiles, and $50.00 in punitive damages against Defendant Hamilton.  (Jury Verdict, d/e 62.)  The jury found in favor of Defendant Olson on the bathroom claim, in favor of Defendant Jennings on a retaliation claim, and in favor of Defendant Pritchard on an excessive force claim.

Before the Court are the post-trial motions.  For the reasons below, Defendants' motion for judgment as a matter of law or a new trial will be denied.  Plaintiff's counsel will be awarded attorney fees of $38,813.75.

## I.   Judgment as a Matter of Law/New Trial

A motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) requires the Court to determine "whether a highly charitable assessment of the evidence supports the jury's

---

against the IDOC defendants were severed into this case for trial.  The claims against the medical defendants remained in case 08-cv-3199 and ultimately settled.

verdict or if, instead, the jury was irrational to reach its conclusion." May v. Chrysler Group, LLC, 716 F.3d 963, 971 (7th Cir. 2013).  All reasonable evidentiary inferences are drawn in Plaintiff's favor, and Defendant's evidence, if sufficiently refuted by Plaintiff, is disregarded.  Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 151 (2000)("[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'").  The Court may not make credibility determinations or weigh the relative strength of the evidence.  Id. As for Defendants alternative request for a new trial, "'[a] new trial is appropriate if the jury's verdict is against the manifest weight of the evidence or if the trial was in some way unfair to the moving party.'" Glickenhaus & Co. v. Household Intern., Inc., 787 F.3d 408, 413 (7th Cir. 2015)(quoting Venson v. Altamirano, 749 F.3d 641, 646 (7th Cir. 2014).

## A.  Retaliation Claim Against Defendant Annette Cowick

Defendant Cowick wrote Plaintiff a disciplinary report on March 28, 2007 accusing Plaintiff of using intimidating or

threatening language in a grievance.  Cowick's report stated that

Cowick had "received a request from . . . [Plaintiff] threatening legal

action against . . . [Cowick] and this facility if his requests were not

adhered to in a timely manner.  Offender also, in offender's

greivances [sic], makes similar threatening statements toward staff

member and administration." (Pl.'s Trial Ex. 8.)  The actual

grievance that Plaintiff had filed against Defendant Cowick which

sparked Cowick's disciplinary report could not be located by

Defendants so is not in the record.  Defendant Cowick testified that

she could not recall exactly what statements Plaintiff had made in

his grievance which she thought were threatening, but that, from

her disciplinary report, she surmised that Plaintiff must have

threatened to sue her, which made her fear for her job.  However,

Plaintiff testified that his grievance had not contained any

intimidating or threatening language.  According to Plaintiff, the

grievance was about Defendant Cowick's failure to respond to

Plaintiff's various grievances and Plaintiff's need to receive a

response so that he could exhaust his administrative remedies if he

needed to file a lawsuit.

Because of Cowick's disciplinary report, Plaintiff was placed in segregation until his disciplinary hearing three days later, when the charges were expunged.  Cowick testified that she had nothing to do with Plaintiff being placed in segregation, but a jury could have reasonably concluded that Cowick would have known that her disciplinary report would trigger Plaintiff's segregation because that was standard procedure on a serious charge such as the charge made by Cowick.

To sustain the verdict against Defendant Cowick, the evidence at trial, viewed in Plaintiff's favor, must have allowed a plausible inference that "(1) [Plaintiff] engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in [Defendant Cowick's] decision to take the retaliatory action." Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012)(quoted cite omitted, bracketed language added).  Plaintiff must have also presented evidence to rebut Defendant Cowick's testimony that she wrote the disciplinary report because she sincerely felt intimated or threatened.  Mays v. Springborn, 719 F.3d 631, 633 (7th Cir. 2013)(If plaintiff makes

prima facie case, Defendants must show that the adverse action would have occurred anyway); Thayer v. Chiczewski, 705 F.3d 237, 250-51 (7th Cir. 2012)(If Defendants have evidence that the adverse action was taken for a legitimate reason, then the plaintiff must show that Defendants' proffered reason is pretextual, that is, a lie.).

Based on Plaintiff's testimony, a reasonable juror could have concluded that Plaintiff's grievance was not intimidating or threatening, particularly since Plaintiff had followed the proper procedure for reporting a problem with staff.  A reasonable juror could have also concluded that Cowick wrote the report to retaliate against Plaintiff for his grievance.  Cowick does not argue otherwise.

Defendant Cowick challenges only whether Plaintiff suffered an action adverse enough to deter a person of ordinary firmness from exercising First Amendment rights.  She cites Bridges v. Gilbert, 557 F.3d 541, 555 (7th Cir. 2009), which held that "a single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action."  However, the only injury the plaintiff in Bridges had was the false accusation.  In this case, Plaintiff suffered segregation in addition to the false accusation.  Segregation is not a *de minimis* injury, and Ms. Cowick does not

argue otherwise.  If the Court accepted Ms. Cowick's argument, prison employees, with impunity, could engineer an inmate's segregation in retaliation for that inmate's grievances by writing a baseless disciplinary report.   That is not what <u>Bridges</u> holds or allows.  Defendant Cowick's qualified immunity argument is based on the same overly broad reading of <u>Bridges</u> and so is also rejected.

## B.  Bathroom Claims Against Defendants Skiles and Hamilton

According to the testimony at trial, the law library at Western Illinois Correctional Center is located on the second floor of the "academic building," which also has classrooms.  There is a bathroom in that hallway that inmates are permitted to use, according to testimony from Ruiz, a Major at Western at the relevant time and the Assistant Warden when she testified.  She testified that she believed that Plaintiff should have been able to use the bathroom with a bathroom pass and that she would have been (or should have been) notified if a rule had been implemented prohibiting inmates from using the bathroom.

Defendant Hamilton offered testimony contradictory to Ruiz's testimony.  Hamilton testified that he had talked with the Warden

about not allowing inmates to use the bathroom because of fighting that had occurred in the bathroom.  He also testified that he told Plaintiff that Plaintiff needed to produce a doctor's note if Plaintiff had a condition that required access to the bathroom.  Neither Skiles nor Hamilton remembered Plaintiff soiling himself.

Plaintiff testified that he has a medical condition that causes a frequent and urgent need to void his bladder or bowels.  The need comes on without warning, is extremely urgent, and very painful if he tries to "hold it in."  He testified that he goes to the bathroom 20-25 times a day, and two or three of those times are bowel movements.  He said that if he tries to hold a bowel movement in, he experiences blood in his stool and extreme pain.  What causes this condition is not in the record, but Plaintiff suspected that it had something to do with three operations he had.  Defendants concede that sufficient evidence was presented that Plaintiff's need was serious and that his need qualified as a disability under the Rehabilitation Act.  (Defs.' Mot. JMOL, d/e 73, p. 6.)

Plaintiff testified at trial that, on May 3, 2007, he was using the library when he had an urgent need to use the bathroom.  He asked the librarian, Defendant Olson, for a bathroom pass, but Ms.

Olson refused to allow him to use the hall bathroom, based on her understanding of a new policy which prohibited inmates in the law library from using the bathroom.  Before this, Plaintiff and other inmates attending the library had been able to use the bathroom by obtaining a bathroom pass from Ms. Olson.  Plaintiff testified that he began questioning Ms. Olson about the policy which brought Defendant Skiles into the library.  Plaintiff reiterated his medical condition, asking Skiles to call the medical unit to confirm Plaintiff's need for immediate access to a toilet.  According to Plaintiff, Defendant Skiles did not call medical and told Plaintiff that inmates in the library were no longer allowed to use the bathroom.  Plaintiff asked Skiles if Plaintiff could go back to his cell, but Skiles refused. Plaintiff testified that his only option was to retreat to the back of the library, where he tried to hold in his bowels but could not.  He soiled himself and then had to wait until the whole inmate line went back to the housing unit before he could return to his cell.  Others laughed at Plaintiff's predicament.

Plaintiff filed a grievance about this incident explaining his medical condition and asking that he be allowed to use the bathroom near the law library.  The grievance was denied on the

grounds that "due to safety and security of the institution, offenders are not allowed to use the restroom while at the library.  Offenders are encouraged to use the restroom prior to going to the library." (Pl.'s Ex. 8).  A similar incident occurred on July 19, 2007, when Defendant Hamilton worked security outside the library, but Plaintiff only urinated on himself a little before he was able to go back to his cell with the inmate line.  These were not the only two times Plaintiff had difficulties; they were just two of the times for which Defendants had a record of grievances.  Plaintiff testified that throughout the relevant time he wrote letters to the Warden and repeatedly asked during his library time to use the bathroom. Plaintiff explained that he did not ask for a medical permit to use the bathroom because he did not think a medical permit could override a security rule.

Defendants Skiles and Hamilton argue that the only evidence they had of any knowledge of Plaintiff's medical condition was Plaintiff's own testimony.  That is enough to sustain the verdict. Plaintiff had personal knowledge and experience of his pain, his need for urgent access to the toilet, and what could happen without that access.  He told Skiles and Hamilton all of this and asked them

to confirm with the medical unit.  A layperson does not need medical training to know that an urgent need to use the bathroom or risk soiling oneself and suffering severe pain is a serious need.  A reasonable juror could have found that Defendants Skiles and Hamilton failed to respond reasonably, instead enforcing their rule without exception or justification.  No evidence was presented that Plaintiff had ever caused any problem using the bathroom in the past, and Plaintiff could have been allowed into the bathroom by himself if Defendants were concerned about fighting.  A reasonable juror could have found that Skiles and Hamilton instituted, for no particularly good reason, an absolute rule prohibiting library inmates from using the bathroom even though they knew that Plaintiff's condition required Plaintiff to have access to that bathroom.

Defendants also argue that deliberate indifference cannot be inferred because they told Plaintiff to obtain a doctor's note verifying his condition.  However, accepting Plaintiff's testimony and the response to his grievance in which he set forth his medical condition and asked for an exception, a reasonable juror could conclude that Plaintiff was told that no exceptions would be made

regardless of Plaintiff's medical condition.  The grievance response mentioned nothing about Plaintiff obtaining a doctor's note.  The response only advised Plaintiff that the rule was for security reasons and that Plaintiff should use the bathroom on his housing unit before attending the library.

Defendants Skiles and Hamilton also argue that Plaintiff was allowed to go back to his cell within 10 minutes after asking, but that directly contradicts Plaintiff's testimony that he was not allowed back to go back to his cell until the entire line of inmates returned to the housing unit from the library.

In short, sufficient evidence was presented to support a finding of deliberate indifference against Defendants Skiles and Hamilton.  The qualified immunity argument by Defendants Skiles and Hamilton relies on cases which did not involve an inmate with a medical condition requiring urgent access to a toilet to avoid severe pain and soiling himself.  The qualified immunity argument also depends on disregarding Plaintiff's testimony. The jury could have reasonably believed that Defendants Skiles and Hamilton simply did not care what kind of pain Plaintiff was in or whether he

soiled himself, even though allowing Plaintiff to use the bathroom would have been a simple and feasible solution.

## C. Rehabilitation Act

Plaintiff's Rehabilitation Act claim required him to prove that the IDOC "denied him access to a program or activity because of his disability." Wagoner v. Lemmon, 778 F.3d 586, 591 (7th Cir. 2015)(quoting Jaros v. IDOC, 684 F.3d 667, 672 (7th Cir. 2012). "Refusing to make reasonable accommodations is tantamount to denying access; although the Rehabilitation Act does not expressly require accommodation, 'the Supreme Court has located a duty to accommodate in the statute generally.'" Id.

Defendants argue that Plaintiff was not denied access to the library because, if Plaintiff at times was forced to leave the library due to his condition, he could have requested to visit the library again. This disregards Plaintiff's testimony that, as a general rule, once in the library he had to stay there with no access to a bathroom until the entire line of inmates returned to the unit. Further, crediting Plaintiff's testimony, each time he visited the library he risked severe pain or possibly soiling himself. Defendants have already conceded that Plaintiff was disabled under

the Rehabilitation Act, which means that Plaintiff was entitled to a
reasonable accommodation to allow him to use the library.  A
rational juror could have found that telling Plaintiff to come back to
the library another time was not a reasonable accommodation.

Defendants reiterate their argument that Plaintiff would have
been allowed to use the bathroom if he had a doctor's note, but the
evidence discussed above allowed a contrary inference:  no
exceptions would be made regardless of Plaintiff's disability.
Defendants also argue that Plaintiff was frequently allowed to
attend the library without issue despite his disability, but that
ignores his testimony that he needed to go to the bathroom urgently
20-25 times a day, and, if he did not, that he suffered severe pain.
A jury could conclude that this kind of suffering effectively deprived
Plaintiff of access to the library because, even though he was
physically present in the library, he was unable to concentrate on
actually using the library resources.

### D.  Jury Instruction on Rehabilitation Act Claim

Relevant to Defendants' motion, the Court's elements
instruction on the Rehabilitation Act claim required Plaintiff to
prove that he was denied access to the prison library "on the same

basis as other inmates" and that the Defendants "deliberately refused to reasonably accommodate Plaintiff's disability, knowing that the refusal would deny Plaintiff access to the prison library on the same basis as other inmates," and that Plaintiff was in fact denied "use of the prison library on the same basis as other inmates." (d/e 59, pp. 34-35.)

Defendants object to the "on the same basis as other inmates" language. Plaintiff argues that Defendants have waived this objection, but the language of this instruction was discussed at the jury instruction conference on July 1, 2015, with defense counsel proffering an alternate instruction which used the term "unable to participate" in an IDOC program and without the "same basis" language. The Court has listened to the recording from that conference, and defense counsel did arguably state that the instruction should include language on Plaintiff's ability to participate in the program. The Court concludes that Defendants have not waived their challenge to the "same basis" language.

However, the Court rejects Defendants' argument on the merits because the "same basis as other inmates" phrase is a correct statement of the law. This language was used in <u>Jaros</u>,

when the Seventh Circuit held that an inmate stated a
Rehabilitation Act claim because he alleged that prison officials'
failure "to accommodate . . . [his] disability kept him from accessing
meals and showers on the same basis as other inmates." Jaros at
672.  Further, the regulations to the Americans with Disabilities Act
and the Rehabilitation Act prohibit the provision of a service to a
qualified individual with a disability "that is not *equal* to that
afforded others."  28 C.F.R. 35.130(ii)(emphasis added); 29 C.F.R.
32.4(b)(ii)-(iii); Jaros at 671-72 (ADA and RA claims are analyzed
the same). The "same basis" language in the Court's instruction
captures that idea of equality in the provision of services.  In
contrast, Defendants' instruction implied that if Plaintiff was able to
"participate" in the library at all, then his claim failed, even if he
could not participate like other nondisabled inmates.  Under
Defendants' instruction, the fact that Plaintiff was allowed to be
physically present in the library would arguably have defeated
Plaintiff's claim, regardless of Plaintiff's ability to actually read or
research because of his urgent need to urinate or defecate.

The Seventh Circuit cases cited by Defendants did not hold
that a Rehabilitation Act claim requires complete denial or severely

limited access to services.  In <u>Love v. Westville Correctional Center</u>, 103 F.3d 558 (7th Cir. 1996), the inmate's access was in fact severely limited, so the question of whether inmate had "meaningful access" was not an issue.  <u>Wagoner v. Lemmon</u>, 778 F.3d 586, 593 (7th Cir. 2015), did not involve the denial of services because the only claims which were not procedurally defaulted were about an improperly equipped van used to transport the inmate to a medical appointment and the inmate's temporarily broken wheelchair.  778 F.3d at 591, 592.  In <u>Wagoner</u>, the inmate "[did] not allege, for example, that the failure to provide him with an adequate wheelchair backrest or a wheelchair-ready van (however inappropriate those failings might otherwise have been) denied him access to any services or programs."  778 F.3d at 593.

Defendants' argument that the instruction should have required Plaintiff to prove that he was denied "meaningful access" is a new argument.  Defendants did not offer an instruction with anything close to that language, nor did they make the argument in any pleading in the record, nor does the Court recall them making the argument orally, though the Court has not listened to all the recordings.  However, the Court will address the argument anyway.

*See* <u>Davis v. Wessel</u>, 792 F.3d 793, 802 (7ᵗʰ Cir. 2015)(argument for some kind of mens rea preserved argument for any kind of mens rea regardless of proposed alternate instruction).

The "meaningful access" language in the cases cited by Defendants deal with how to determine whether an accommodation is reasonable. A reasonable accommodation is one that allows for meaningful access. The Court has no quarrel with that concept, which was already encompassed in the instructions. The instructions explained that Plaintiff claimed that Defendants failed to reasonably accommodate Plaintiff's disability, which resulted in Plaintiff's inability to use the library on the same basis as other inmates. Reasonable accommodation was defined as including changes that were reasonably within the facility's capability and not unduly burdensome. (d/e 59,pp. 32-35). This definition did not imply that Defendants had to give Plaintiff any accommodation he requested, as Defendants now argue.

## II.    Plaintiff's Motion for Attorney Fees

42 U.S.C. § 1988(b) allows the Court "in its discretion" to allow "the prevailing party, . . . a reasonable attorney's fee as part of the costs . . . ." in certain actions, including actions under 42 U.S.C. §

1983 like this one.  However, in § 1983 actions filed by prisoners, a

cap on attorney's fees is set at 150% of the jury award. 42 U.S.C. §

1997e(d)(1).  Defendants do not dispute, though, that Plaintiff's

Rehabilitation Act claim is not subject to this limit.  *See* 29 U.S.C. §

794a(b); 42 U.S.C. 1997e(d)(1).  The Court agrees with Plaintiff that

the legal work on the Eighth Amendment claims and the

Rehabilitation Act claim are inseparable, since those claims were all

different theories of recovery based on the same facts.

Defendants argue that no attorney fees are warranted because

Plaintiff's win was insignificant, citing Farrar v. Hobby, 506 U.S.

103 (1992).  In Farrar, the Supreme Court recognized that a civil

rights plaintiff who wins any amount of damages, even nominal

damages of $1.00, is a prevailing party for purposes of 42 U.S.C. §

1988.  506 U.S. at 112.  However, the Court explained further that

the "'degree of success'" factors largely into determining what is a

reasonable attorney fee.  Id. (quoted cite omitted).  The Farrar Court

upheld the lower court's denial of an attorney fee award, even

though the plaintiff had prevailed on his claim against one

defendant.  The Court remarked, "[i]n some circumstances, even a

plaintiff who formally 'prevails' under § 1988 should receive no

attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party."  506 U.S. at 115.  The Seventh Circuit has similarly upheld the denial of a fee award where the recovery was minimal compared to the amount sought:

> [The] three factors, articulated in Justice O'Connor's concurrence [in *Farrar*], are the difference between amounts sought and recovered, the significance of the legal issue on which the plaintiff prevailed compared to those litigated, and public goal achieved. *See Farrar*, 506 U.S. at 121–22; *Simpson*, 104 F.3d at 1001. Of these three factors, the sum-awarded-versus-requested (which is also part of the threshold inquiry into whether to apply *Farrar*) is the most important.

Aponte v. City of Chicago, 728 F.3d 724, 729 (7th Cir. 2013)(affirming denial of a fee award where, on the plaintiff's one successful claim, the plaintiff asked for $25,000 in compensatory damages and was awarded $100 (.4 %)(bracketed language added)). "[I]n determining whether an award should be analyzed under Farrar, district courts should look at the entire litigation history, including the number of victorious versus unsuccessful claims, the amount of damages sought versus recovered, time expended by the parties, and judicial resources."  728 F.3d at 728.

Applying this standard, the Court concludes that an award of attorney fees is warranted despite the fact that the jury awarded only $152.00.  Plaintiff's second amended complaint sought $10,000 on the Rehabilitation Act claim, but Plaintiff did ask the jury for much less in his closing argument, admitting that his case was not a big dollar case.  Plaintiff asked the jury for only $500-1,000 on his bathroom claims, of which his award represents 15% to 30%, depending on which figure is used.  In <u>Farrar</u>, the plaintiff had asked for 17 million dollars and was awarded $1.00, an enormous disparity not present here, and the district court in <u>Farrar</u> had awarded $280,000 in attorney fees.

Defendants point out that Plaintiff did not lower his damage request until closing arguments in the jury trial, and Plaintiff does not dispute Defendants' assertion that Plaintiff's settlement offer before trial on the bathroom claims was $9,500.  However, a $9,500 settlement offer is not such an unreasonable request like the $17 million sought in <u>Farrar</u>.

The rights Plaintiff vindicated, though personal to him, are also important rights for the humane treatment of prisoners, and therefore have broader significance and public value.  An inmate's

exercise of his right to file a grievance or a lawsuit alerts authorities of a possible problem.  Prison administrators and the Courts cannot act as checks on the abuse of power if inmates fear segregation for filing a grievance or complaint.  As for Plaintiff's Eighth Amendment and Rehabilitation Act claims, those claims were about the basic dignity of a human being.  Though Defendants argue that Plaintiff effected no change in policy, the Court wonders whether the library bathroom rule Plaintiff challenged is still in place.  *See* <u>Hyde v. Small</u>, 123 F.3d 583, 595 (7th Cir. 1997)(if fees were not awarded because the verdict was small and the case broke no new ground, then unconstitutional conduct would be, "as a practical matter, beyond the reach of the law.").  Additionally, Plaintiff's counsel makes a valid point that some of his fees might have been avoided if Defendants had been more cooperative in discovery.  (Pl.'s Pet. Fees, d/e 66, pp. 4-6.)

The fact that Plaintiff lost on the claims unrelated to the claims he won should not be held against counsel.  This Court made the decision to saddle pro bono counsel with all of Plaintiff's unrelated claims and ordered that those claims be tried at the same time.  If the Court had severed the bathroom claim and retaliation

claim against Cowick into a separate trials, Plaintiff would have won both cases.  And, while the request-versus-award factor is important, court-appointed pro bono counsel, as a practical matter, does not have the luxury of withdrawing if a client refuses to revise unreasonable expectations.  Recruiting pro bono counsel on a civil case like this is difficult.  Failing to reasonable compensate pro bono counsel for the rare win will make that recruitment even more difficult.

Accordingly, the Court rejects Defendants' argument that no fees are warranted, and the Court will use the lodestar approach. Defendants agree that the $250 hourly rate of Plaintiff's counsel is reasonable.  Defendant also agree that 108.3 hours of attorney work on Plaintiff's successful claims is reasonable, which amounts to $27,050.  (d/e 77, pp. 6, 8.)  Defendants object to the other 156.75 hours claimed.

The Court has reviewed and agrees with some of Defendants' objections.  However, the Court concludes that counsel's work before official appointment to the case is compensable (2 hours), that at least half of the attorney time spent amending the complaint is compensable (7 hours), and two-thirds of the attorney time spent

in July, through the trial, was attributable to the successful claims (39.8 hours).  Much of the trial testimony focused on the bathroom claims and the retaliation claim against Cowick, which were the strongest claims in the Court's opinion.  The Court agrees with Plaintiff that paralegal time of $813.75 was reasonable and necessary.  The Court also concludes that $1,000 of fees were reasonably and necessarily incurred in preparing and filing the fee petition.  The Court agrees with Defendants that the expenses sought as fees under 42 U.S.C. § 1988 are subject to the 150% attorney fee cap in 42 U.S.C. §1997e(d)(1), which is already subsumed in the lodestar calculation.

Taking the above into account, the total attorney fees awarded are $38,813.75.  This represents $27,050 which Defendants agree is reasonable (if <u>Farrar</u> does not apply), plus $9,950 (2/3 of the objected time spent in July through trial), plus $813.75 (paralegal), plus $1,000 (fee petition).

No portion of the judgment shall be applied to satisfy this award because that requirement applies only to fees awarded under 42 U.S.C. § 1988.  42 U.S.C. § 1997e(d)(2).  Here, the statutory

authorization to award more than nominal fees comes from the Rehabilitation Act, 29 U.S.C. § 794a(b).

**IT IS ORDERED:**

(1)    Defendants' motion for judgment as a matter of law or for a new trial is denied (72).

(2)    Plaintiff's motion for Attorney Fees is granted in part and denied in part (66).  Plaintiff is awarded attorney fees in the amount of $38,813.75.

(3)    Plaintiff's bill of costs in the amount of $330.20 is allowed.

(4)    The clerk is directed to amend the judgment to reflect the award of attorney fees and costs.

ENTER:  March 17, 2016

FOR THE COURT:


_____**s/Sue E. Myerscough**_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE